## Tucker *against* Juhel and De Longuamare.

Insurance on 10 hogsheads of sugar from Antigua to New-York, the property *warranted* by the assured, " free from any charge, damage, or loss, which may arise in consequence of seizure, or detention, for, or on account of any illicit or prohibited trade, or any trade in articles contraband of war." By a proclamation of the government of Antigua, sugars were allowed to be exported in American vessels, on certain terms.

THIS was an action on a policy of insurance upon ten hogsheads of Sugar, specified in the margin of the policy, on board of the ship *Charlotte*, at, and from Antigua to New-York. At the trial, before his honor, Mr. Justice Radcliff, at the New-York *Sittings*, the 10th April, 1802, a verdict was found for the plaintiff, for a *total loss*, subject to the opinion of the court, on the following case.

On the 23d day of October, 1799, the defendants underwrote the policy to the plaintiff, for 500 dollars, at a premium of nine per cent. The sugars were valued at 1600 dollars. The policy contained a printed clause *of warranty*, in the following words : " It is also agreed that the property be warranted by the assured, free from any charge, damage, or loss, which may arise in consequence of a seizure, or detention, for or on account of any illicit or prohibited trade, or any trade in articles contraband of war." The insurance was effected by direction of the plaintiff, being the sole consignee, for and on account of George Tucker, a British subject, resident at Antigua, and owner of the sugar.

The bill of lading was dated at Antigua, the 5th October, The vessel arrived at *Antigua* on the 4th September, 1799, entered into the usual sugar-bond, began to load on the 12th September, but did not complete the lading and clear out before the 8th October. On the 4th September, an order was issued for revoking the permission to export sugars, but was not delivered at the custom-house, at St. Johns, in Antigua, until the 10th of that month. On an opinion given by the president of the island, that vessels who had already entered into the sugar-bond might be cleared out with their sugar, the vessel was cleared, and sailed on her voyage, when she was captured by a French privateer recaptured by a British ship of war, and carried into Basseterre, in the island of *St. Christophers*, where the vessel and cargo were restored, on payment of salvage, but the sugar was afterwards seized and condemned as forfeited, for a *breach of the laws of trade*. It was held that, notwithstanding the vessel had regularly cleared out, the exportaion of the sugar, after the revocation of the permission, was illicit, and so a breach of the *warranty*, contained in the policy against *illicit* or prohibited trade.

1799. The *Charlotte* was an American ship, and set sail on her voyage to New-York, on the 9th day of October, with the sugar and the residue of her cargo, consisting of rum, quicksilver, and paper. She was captured on the 11th of the same month by a French privateer, and on the fourteenth of the same month, was recaptured by the British ships of war, Lapwing and Southampton, and sent into Basseterre, in the island of St. Christophers, where she arrived on the 18th of October. The plaintiff having received information of the capture, on the 28th November, abandoned his interest to the defendants, stating as the cause, that the property had been captured by a French privateer, and carried into some port in the West-Indies.

ALBANY,
Feb. 1806.

Tucker
v.
Juhel and
another.

Proceedings were instituted in the Vice Admiralty Court of St. Christophers, by the recaptors, on the 21st day of October, against the vessel, and cargo, for salvage. On the 23d day of November, the court decreed in favor of the recaptors, allowing them for salvage one half of the value of the vessel, with costs, and one eighth of the value of the cargo, with costs, and ordering the residue to be restored to the captain, as claimant. On the 23d October, an information was filed in the same court against the other half of the vessel, and the residue of the cargo, by the collector of the customs, and another officer, *qui tam &c.* for a *breach of the laws of trade*, in exporting sugar from Antigua after the 1st day of June, 1799. The court condemned the whole of the sugar on board, for such breach of the laws, but restored the residue of the cargo, and vessel, to the captain, on payment of costs.

From the proceedings of the admiralty court, set forth in the case, it appeared, that by a proclamation of the 6th of April, 1799, by the government of the island of Antigua, American vessels were allowed to export from that island, in exchange for certain articles imported, sugar, not exceeding one third of the cargo. The *Charlotte* sailed from New-York, the 7th of August, 1799, and arrived at Antigua, on the 4th of September. A bond, called the *sugar-bond*, required by the officer of the customs, was given, on a calculation made, how much sugar might be exported, accord-

ALBANY,
Feb. 1806.

Tucker
v.
Juhel and
another.

ing to the regulation of the 6th of April, and the same was *entered outwards* for exportation. While the master was taking in his homeward cargo, and after about one third of his lading was on board, he heard that an order had been isssued by the commander in chief, forbidding any sugar to be shipped in American bottoms. The master was told by his consignee, and at the custom-house, that those vessels which had arrived, and entered into the *sugar-bond*, before the order was issued, might proceed to complete their lading of sugar; and that the quicksilver and paper, being prize-goods, might be exported. The master, accordingly, completed his lading, on the 8th day of October, 1799, and obtained the regular clearances at the custom-house, without any obstruction whatever. The order of the commander in chief, revoking the permission of the 6th of April, 1799, allowing the exportation of sugar to the United States in American bottoms, was dated at Stapletons, the place of his residence, the 4th of September, and inclosed under cover, to Edward Byam, President of the Island, at St. Johns, who received it the 10th of September, and on the same day delivered the letter, directed to the officer of the customs at that place. On the same day, or the day after, President Byam having been applied to, by the principal clerk of the customs, to know what was to be done in regard to such sugars as were shipped, or entered outwards to be shipped, before the order from the commander in chief arrived, he replied, that sugars in that situation, contracted for in payment for American commodities, might undoubtedly be cleared. Though the sugar had been entered *outwards to be shipped*, at the custom-house, before the receipt of the order revoking the permission to export that article, yet the master did not begin to load until the 12th of September, nor did he obtain his clearance for New-York, until the 8th of October.*

---

* President Byam, of Antigua, at the conclusion of his letter to the hono rable Thomas Norbury Kirby, Esquire, at St. Kitts, in answer to some inquiries respecting the *Charlotte*, says, " I sincerely wish this information " may contribute to the relief of those concerned in the ship *Charlotte* and " her lading ; which is the most rigorous cruel case I ever remember."

'Three points were insisted on, by the counsel for the plaintiffs. 1. That the exportation of the sugar was legal. 2. Admitting it to be illegal, yet it could not be seized and condemned at *St. Kitts*, on board of an American vessel, after it had been exported from *Antigua;* and that the sentence of the court at St. Kitts, was unjust, and a nullity. 3. That the loss was complete by the first capture, and no restoration had ever been made.

ALBANY,
Feb. 1806.

Tucker
v.
Juhel and
another.

The cause was argued at the last term, by *Harison*, for the plaintiff, and *Hoffman*, for the defendants.

THOMPSON, J. now delivered the opinion of the court. The claim in this case is for a total loss, by capture. The policy provides against subjecting the underwriters to any loss, which may happen by reason of any illicit, or prohibited trade. The right of the assured to recover, will depend on the question, whether this was an illicit trade. The assured endeavours to bring himself within the permission given, by the proclamation of the 6th of April, 1799, in the island of Antigua, to allow the exportation of sugars, upon certain conditions.

*( Here the judge stated the facts in the cause, and then proceeded. )*

The opinion given by President Byam, according to the judgment of the court of admiralty at St. Kitts, was erroneous. The revocation, by the commander in chief of the permission of the 6th of April, was general, containing no provision for cases like the present. The advice, and permission of the President, was altogether unauthorised, and the exportation of the sugar illegal. The condemnation, under the circumstances stated in the case, was, I think, extremely rigorous : it purported, however, to be bottomed on a breach of the laws of trade, which, in strict construction, was true. The loss has, therefore, been occasioned by a peril, not within the policy. The underwriters are exonerated from every loss, or damage, which may arise in consequence of a seizure or detention for, or on account of any illicit or prohibited trade. That the seizure and condemnation was on account of a prohibited trade, cannot be denied. The case may be a hard one upon the assured; but his remedy, if any he has, is not against the underwriters. They have, by the policy, ex-

ALBANY
Feb. 1806.

pressly guarded against responsibility for losses on this account. The opinion of the court, therefore, is, that the defendants are entitled to judgment.

*Postea* to the defendants.